United States District Court
Southern District of Texas
**ENTERED**
June 30, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SOUTH AVIS REALTY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 1:19-CV-206 |
| | § | |
| BEN R. NEECE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **OPINION AND ORDER**

Plaintiff South Avis Realty, Inc. requests that the Court "reconsider and vacate" its March 16, 2020 Order dismissing all of SAR's claims against Defendant Ben R. Neece. (Rule 59(e) Motion to Alter or Amend Judgement (Doc. 35); Order, Doc. 29). For the following reasons, the Court finds SAR's Motion not well taken.

### I.   **Allegations and Procedural History**[1]

Jersey Shore Steel Company (JSS) agreed to buy used rail scrap metal from Defendant Franklin Global Resources, Inc. (FGR), and they signed a Purchase Agreement toward that end. JSS later assigned its rights as buyer to Plaintiff SAR. Ben R. Neece represented FGR in the negotiations and signing of the Purchase Agreement.

In March 2019, SAR deposited $900,000 into the Neece IOLTA Trust Account as an initial step toward the purchase of the scrap metal. When problems arose between the parties, FGR neither delivered scrap metal nor returned the $900,000 to SAR.

SAR then filed this lawsuit to recover the $900,000.[2] In addition to asserting claims against FGR, SAR alleged causes of action against Neece for breach of fiduciary duty, conversion, fraud, negligence, and unjust enrichment, arguing that "upon acceptance and confirmation of the deposited funds into his IOLTA Trust Account, [Neece] was obligated to

---

[1] The Court's Order granting Neece's Motion to Dismiss contains a more detailed summary of the allegations. (*See* Order, Doc. 29)

[2] SAR sought a temporary restraining order, which the Court denied. (Order, Doc. 11) During the hearing, counsel for FGR confirmed that Neece's IOLTA Trust Account no longer held the $900,000.

perform the functions of an escrow agent." (Compl., Doc. 1, ¶¶ 51–54, 64–80)  Soon after, Neece

moved for dismissal of SAR's claims for failure to state a claim upon which relief can be granted.

(Neece Motion to Dismiss, Doc. 14)

In March 2020, the Court granted Neece's Motion to Dismiss, concluding that SAR's

allegations and the documents attached to the Complaint demonstrated as a matter of law that

Neece was not an escrow agent for purposes of the Purchase Agreement and did not owe SAR

any fiduciary duties.  (Order, Doc. 29)  In addition, the Court concluded that the Texas attorney-

immunity doctrine rendered Neece immune from suit as to SAR's claims of conversion, fraud,

negligence, and unjust enrichment.  (*Id.*)  The Court dismissed all of SAR's causes of action

against Neece with prejudice.  (*Id.* at 11)

SAR then filed the pending Motion under Federal Rule of Civil Procedure 59(e),

requesting that the Court reconsider its dismissal with prejudice so that it could file an amended

complaint against Neece.  (Motion Doc. 35, 2)  SAR argues that "the Court committed manifest

error [in] finding [that] attorney immunity insulates Neece from SAR's tort claims".  (*Id.*)  In

support of its Motion, SAR proffers "newly discovered evidence shedding further light and

clarification on Neece's role in the underlying transaction".  (*Id.* at 2–3)  The evidence includes

two emails between JSS and its banking institution, Brown Brother Harriman & Co. (BBH),

written during the negotiations between JSS and FGR.  The first email is from a BBH Managing

Director to three JSS employees.  The Managing Director asks JSS about Neece's role in the

transaction:

> Given the payment to the escrow account (and not to the seller directly)
> we need you to clarify . . . the following questions:
>
> 1.  What is the nature of the relationship between Franklin Global
>     Resources and the account titled "IOLTA Trust account Ben R.
>     Neece , Attorney" [?]
>
> 2.  Why are you not paying Franklin Global Resources directly?

(BBH Email, Doc. 35-3, 1)  One of the JSS employees responds:

> I just spoke to the seller [FGR] and asked him the questions you relayed. His answers were as follows:
>
> 1. Attorney Neese [sic] is the Corporate Attorney for FGR.
> 2. All their business transactions go through this IOLTA Account.

(JSS Email, Doc. 35-4, 1)   SAR contends that these "recently discovered" emails support its allegations that "the independent conduct by Neece [in] allowing his attorney IOLTA Trust Account to be used [furthered] a notion of trust that SAR's $900,000 deposit would be safe if FGR failed to perform under the contract." (Motion, 35, 3)   In addition, SAR argues that the emails reveal that the "subject transaction (one which SAR has pled was dubious and fraudulent in nature) would not have occurred without Neece's involvement and allowance of his IOLTA Trust Account to be used as an assurance of trust to SAR." (*Id.*)

Neece responds by urging the Court to leave its ruling undisturbed, arguing that SAR "is using the Rule 59(e) procedure in bad faith and to, inappropriately, rehash its previous arguments in a futile effort to reopen its case against defendant." (Neece Response, Doc. 37, 4) Neece adds that the emails on which SAR relies actually support his position that he acted solely as an attorney and that the IOLTA Trust Account functioned only to receive a down payment, and not as an escrow account. (*Id.* at 5)

Subsequently, SAR filed a Supplemental Motion, which includes additional "newly discovered evidence" for the Court to consider. (Pl.'s Suppl. Mot., Doc. 47, 1) This evidence is a September 2019 letter from Neece addressed to Mr. Mark Bolatete, with the subject noted as "Used Rail Transaction / Saudi Arabia". (Bolatete Letter, Doc. 47-1, 1) In relevant part, Neece writes:

> Mr. Bolatete,
>
> As you are aware, my law firm represents Franklin Global Resources (FGR) . . . on all commodity transactions.

> FGR processes all transactions through my IOLTA Trust Account and I personally oversee all transactions that are transacted. Further this office would also process all commissions payable to the designated parties for each transaction.
>
> Mr. Del Mastro spoke with me concerning allegations made by you that FGR has transacted USED Rail . . . from the above referenced company to FGR's exit buyers.  This office has not process [sic] one transaction at all from the above referenced Seller-Supplier, since the contract was signed and amended in July 2019.

(Bolatete Letter, Doc. 47-1, 1)  Based on this correspondence, "[u]pon information and belief", SAR contends that (1) the letter refers to the scrap metal at issue in this case; (2) SAR is the "exit buyer" referenced in the letter; and (3) "Mr. Bolatete is an unknown person believed to be a possible connection of FGR" and the scrap metal supplier.  (Pl.'s Suppl. Mot., Doc. 47, 1–2)  SAR emphasizes that while Neece assured Bolatete that he had not processed any transactions from the Seller-Supplier, he failed to disclose that SAR's $900,000 deposit "had already been processed through his IOLTA Trust Account . . . on March 28, 2019".  (*Id.* at 2)

## II.  Analysis

"In [the Fifth] Circuit, when a district court dismisses the complaint, but does not terminate the action altogether, the plaintiff may amend under Rule 15(a) with permission of the district court."  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Whitaker v. City of Houston*, 963 F.2d 831, 835 (5th Cir. 1992).  SAR is correct that  "leave to amend 'shall be freely given when justice so requires.'"  *Id.* at 863 (quoting Fed. R. Civ. P. 15(a)(2)).   At the same time, the Supreme Court has enumerated five factors that, if shown to exist, typically warrant denial of leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Rosenzweig*, 332 F.3d at 864 (applying the *Foman* factors).  One factor that a court may consider is the "futility of the amendment".  *Id.*   "A district court may deny a proposed amendment for futility-meaning the amended complaint would fail to state a claim upon which relief could be granted."  *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016).  "Dismissal is proper 'when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to

relief,' [or] 'if the complaint lacks an allegation regarding a required element necessary to obtain relief.'"  *Id.* (quoting *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009)).

The Court applies these principles to determine whether SAR's proposed new evidence—which the Court accepts as new allegations that SAR would propose to add in an amended complaint—demonstrates sufficient facts to establish that Neece owed SAR a fiduciary duty, or that Neece's affirmative defense of attorney immunity is not applicable to his conduct in this matter.

### A.  Fiduciary Duty

In Texas, to prevail on a claim for breach of fiduciary duty, the plaintiff must show (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages."  *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).  "When the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court."  *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005).

In the present matter, SAR emphasizes the emails between JSS and BBH to argue that "regardless of whether Neece is deemed an escrow agent, SAR and BBH *understood* that Neece's IOLTA Trust Account was being used as an escrow or at the least [as] a 'trust' rather than a conventional business account in the underlying transaction at that time."  (Motion, Doc. 35 at 4 (emphasis in original))  SAR further argues that "the subject transaction . . . would not have occurred without Neece's involvement and allowance of his IOLTA Trust Account to be used as an assurance of trust to SAR."  (*Id.* at 3)  The emails, however, when viewed in the light most favorable to SAR, allege only that SAR believed Neece acted as an escrow agent.  They have no bearing on whether FGR or Neece himself viewed Neece's role in the transaction as anything other than FGR's counsel.  This distinction is important because under Texas law, the subjective belief of an individual in a transaction does not impose fiduciary duties or create an escrow

arrangement with the other party to the deal.  *See, e.g.*, *Chapman Children's Tr. v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 439 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("In Texas, a fiduciary relationship is an extraordinary one and will not be lightly created. . . . The mere fact that one party subjectively trusts another does not, alone, indicate . . . [a] fiduciary relationship[] because something apart from the transaction between the parties is required."); *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 809 (5th Cir. 2017) (finding that "mere subjective trust alone is not enough to transform arm's-length dealing into a fiduciary relationship") (quoting *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992)) (internal quotation marks omitted).  As a result, the "new" allegations that the emails represent cannot support SAR's causes of action against Neece.  Granting SAR leave to amend its Complaint to add these allegations would be futile.

### B. Fraud

SAR also argues that through Neece's email to Bolatete—which, again, the Court considers as proposed new allegations—"Neece became a *guarantor* to Mr. Bolatete" as to the representation that "based on Neece's diligent supervision of his IOLTA Account, no transactions had been processed related to the subject transaction."  (Pl.'s Suppl. Mot., Doc. 47, 3 (emphasis in original))  SAR argues that by making this representation, Neece "clearly intended to induce Mr. Bolatete into a sense that the subject transaction had not even commenced",  notwithstanding the fact that SAR had already requested the return of its $900,000 deposit.  (*Id.* at 3)  SAR proposes that Neece's intentional misrepresentation demonstrates that he "was potentially actively aiding and assisting FGR [to] perpetuate a fraud as to the entire transaction."  (*Id.* at 4)

These proposed allegations, however, cannot support a cause of action by SAR against Neece.  The statements by Neece do not constitute representations to SAR, much less material misrepresentations on which SAR could rely to support a fraud claim.  *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) ("Both fraud and negligent

misrepresentation require that the plaintiff show actual and justifiable reliance [on the representation].”); *see also Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (explaining that a plaintiff's cause of action for fraudulent inducement of a contract requires “a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury”) (quoting *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994)) (internal quotation marks omitted).   Even accepting that Neece made a misrepresentation in the correspondence, any claim based on the misrepresentation would belong to Bolatete, the recipient of the alleged misrepresentation.

It is true that at times, a misrepresentation to one party can support a third party's cause of action.   Under Texas law, if a speaker “makes a false representation to another with the intent or knowledge that it should be exhibited or repeated to a third party for the purpose of deceiving him, [then] the third party, if so deceived to his injury, can maintain an action in tort” against the speaker.   *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001) (quoting *American Indem. Co. v. Ernst & Ernst*, 106 S.W.2d 763, 765 (Tex. Civ. App.—Waco 1937, writ ref'd)).   The correspondence on which SAR relies, accepting SAR's construction, does not satisfy these elements.   SAR does not allege that Neece made a false representation to Bolate with the intent or knowledge that Bolatete would then repeat the false representation to SAR, to its detriment.   In other words, the letter by itself does not suggest that Neece intended that his statements to Bolatete would reach SAR or induce the corporation in any manner.

### C.  Attorney Immunity

SAR contends that both the emails between BBH and JSS, as well as Neece's letter to Bolatete, contain information that removes Neece from the protections that the attorney immunity doctrine provides.   First, SAR proposes to allege that FGR's use of Neece's IOLTA Trust Account was “unusual” and that “accepting a *non-client's* money into an attorney bank

account that is normally designated for the protection and entrust of client funds, is not the 'kind of conduct in which an attorney engages when discharging his duties to his client.'" (Motion, Doc. 35, 4 (citing *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015)) (emphasis in original))  Second, SAR alleges that Neece's own statements to Bolatete—*i.e.*, that Neece "personally oversee[s]" all of FGR's transactions and that his office "process[es] all commissions payable to the designated parties for each transaction"— demonstrate that Neece engaged in conduct foreign to his duties as FGR's counsel.  (Bolatete Letter, Doc. 47-1, 1)

       The Court finds SAR's arguments unpersuasive.

       "[T]he attorney immunity doctrine under Texas law generally insulates a lawyer from civil liability to a non-client for conduct performed as part of the discharge of the lawyer's duties to his client." *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 764 (5th Cir. 2019). "Put differently, an attorney may be liable to nonclients only for conduct outside the scope of his representation of his client or for conduct foreign to the duties of a lawyer." *Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018).  "An attorney who pleads the affirmative defense of attorney immunity has the burden to prove that his alleged wrongful conduct, regardless of whether it is labeled fraudulent, is part of the discharge of his duties to his client." *Cantey Hanger*, 467 S.W.3d at 484.  The inquiry "correctly focuses on the *kind* of conduct at issue rather than the *alleged wrongfulness* of said conduct." *Youngkin*, 546 S.W.3d at 681 (citing *Cantey Hanger*, 467 S.W.3d at 483) (emphasis in original).  "That is, a lawyer is no more susceptible to liability for a given action merely because it is alleged to be fraudulent or otherwise wrongful." *Id.* (citing *Cantey Hanger*, 467 S.W.3d at 483).  "Although Texas courts occasionally grant attorney immunity at the motion to dismiss stage, in those cases, the scope of the attorney's representation—and thus entitlement to the immunity—was apparent on the face of the complaint." *Kelly v. Nichamoff*, 868 F.3d 371, 375 (5th Cir. 2017) (citing *Highland Capital Mgmt., LP v. Looper Reed & McGraw, P.C.*, No. 05-15-00055-CV, 2016 WL 164528, at *1, *7

(Tex. App.—Dallas Jan. 14, 2016, pet. denied)); *Ironshore*, 912 F.3d at 759, 763–64 (citing *Kelly*, 868 F.3d at 375).

Here, the Complaint, the documents attached to the Complaint, and the newly proposed allegations contained in the emails and Neece's letter, all demonstrate that Neece acted solely as FGR's attorney in connection with the Purchase Agreement.  In fact, the emails on which SAR relies unambiguously confirm that "Attorney Neese [sic] is the Corporate Attorney for FGR", and that FGR typically used Neece's IOLTA Trust Account in transactions.  (JSS Email, Doc. 35-4, 1)  Likewise, in the Bolatete letter, Neece confirms that "[his] law firm represents Franklin Global Resources" and that "FGR processes all transactions through [Neece's] IOLTA Trust Account".  (Bolatete Letter, Doc. 47-1, 1)  No current allegation or proposed allegation, even when accepted as true and viewed in the light most favorable to SAR, suggests that Neece was providing legal services to any party other than FGR or that the nature of his conduct exceeded that of corporate counsel.

SAR highlights that Neece, by permitting use of his IOLTA Trust Account, engaged in conduct atypical for an attorney.  No allegation, however, suggests that either FGR or Neece made any representation to SAR regarding the purpose or nature of Neece's IOLTA Trust Account.  SAR appears to argue that any attorney who allows a client to utilize the attorney's IOLTA Trust Account for purposes of a transaction automatically owes duties to the opposing party in the deal.  The law does not support such a result.  *See, e.g.*, *Chapman*, 32 S.W.3d at 438 n.6 (distinguishing situations where a party deposits funds with a bank from those where a party deposits money into "an opposing counsel's law firm", and "declin[ing] to find that a client's deposit of funds into his attorneys' trust account create[d] a trustee/beneficiary relationship between his lawyers and an opposing party"); *cf. Alexander O & G, L.L.C. v. Nomad Land & Energy Res., L.L.C.*, 313 F. Supp. 3d 794, 802 (S.D. Tex. 2018) (concluding that under Texas law, absent an escrow agreement, funds wired to a law firm's IOLTA account in connection with

a purchase and sales agreement failed to "transform [the firm] into an escrow agent" or impose any fiduciary duties).

SAR relies on *Kelly v. Nichamoff*, but that case is distinguishable. *See Kelly*, 868 F.3d at 371. In *Kelly*, Nichamoff represented Rembach in a sale of company shares to Kelly, who later sued Rembach, Nichamoff, and Rembach's accountant for fraudulently inducing her to purchase undervalued shares. *Id.* Kelly alleged that as part of the deal, Nichamoff falsely assured her that she was purchasing shares sufficient to give her 50% ownership in Rembach's company, falsely represented the value of the shares at issue, wrongfully withheld and concealed material information that would have revealed fraud, and held a personal pecuniary interest in Kelly's acquisition of the stock. *Id.* at 373–75. The Fifth Circuit affirmed the denial of Nichamoff's motion to dismiss, reasoning that accepting the allegations as true, Nichamoff participated "in independently fraudulent activities, rather than merely representing a client's interests in a business transaction." *Id.* at 375 (internal quotation marks omitted). As a result, the attorney immunity doctrine did not shield Nichamoff from liability. *Id.* at 376.

Here too, SAR acknowledges that Neece represented FGR in this transaction. In contrast to *Kelly*, however, the only conduct outside of legal representation that SAR alleges by Neece is that he allowed his client (FGR) to use his IOLTA Trust Account to receive funds related to the Purchase Agreement, and that he "personally" oversaw and processed payments related to FGR's transactions. Such conduct falls far short of the impermissible conduct alleged against the attorney in *Kelly*: SAR does not allege that Neece made any representations to SAR or wrongfully withheld material information from SAR.

As entitlement to immunity is apparent from the face of SAR's Complaint, Neece is not required to make an additional showing as to the scope of his representation to FGR; he is entitled to the defense of attorney immunity. *See id.* at 375 (explaining that, under Texas law, when the facts alleged by a plaintiff are "sufficient to support the defense of immunity," a defendant does "not need to present further evidence in support of its motion") (citing *Highland*

*Capital Mgmt., LP*, No. 05-15-00055-CV, 2016 WL 164528, at *1, *7).  As a result, the Court finds that even when viewing the proposed allegations in SAR's favor, the attorney immunity doctrine would afford Neece a complete defense.  SAR's proposed amendments would be futile.

### III.    Conclusion

For these reasons, it is:

**ORDERED** that Plaintiff South Avis Realty, Inc.'s Rule 59(e) Motion to Alter or Amend Judgment (Doc. 35) is **DENIED**;

**ORDERED** that Plaintiff South Avis Realty, Inc.'s Supplemental Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. Pro. 60(b)(2) (Doc. 47) is **DENIED**; and

**ORDERED** that Defendant Ben R. Neece's Objection to Late Filing of Plaintiff's Reply (Doc. 40) is **OVERRULED**.

SIGNED this 29th day of June, 2020.

Fernando Rodriguez, Jr.
United States District Judge